*PRELIMINARY PRINT*

VOLUME 605 U. S. PART 2
PAGES 460–494

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 18, 2025

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# PERTTU *v.* RICHARDS

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 23–1324   Argued February 25, 2025—Decided June 18, 2025

The Prison Litigation Reform Act (PLRA) requires prisoners with complaints about prison conditions to exhaust available grievance procedures before filing suit in federal court. 42 U. S. C. § 1997e(a). But "exhaustion is not required" when a prison administrator "threaten[s] individual inmates so as to prevent their use of otherwise proper procedures." *Ross* v. *Blake*, 578 U. S. 632, 644. "Such interference with an inmate's pursuit of relief renders the administrative process unavailable," so "§ 1997e(a) poses no bar" to suit. *Ibid.* The question presented is whether a party has a right to a jury trial on PLRA exhaustion when that dispute is intertwined with the merits of the underlying suit.

In this case, inmate Kyle Richards alleges that Thomas Perttu, a prison employee, sexually harassed Richards and other inmates. Richards also alleges that, when he attempted to file grievance documents about the abuse, Perttu destroyed them and "retaliated against" him for attempting to file them. Richards sued Perttu under 42 U. S. C. § 1983 for violating his constitutional rights, including his First Amendment right to file grievances. Perttu moved for summary judgment, arguing that the plaintiffs had failed to exhaust available grievance procedures as required by the PLRA. The Magistrate Judge concluded that there was "a genuine issue of fact as to whether Plaintiffs were excused from properly exhausting their claims due to interference by Perttu" and that the issue was "appropriate for resolution during an evidentiary hearing." App. to Pet. for Cert. 86a. At that hearing, the Magistrate Judge concluded that Richards's witnesses regarding Perttu's alleged destruction of grievance forms "lacked credibility." The Magistrate Judge recommended dismissal without prejudice for failure to exhaust, and the District Court adopted that recommendation. The Sixth Circuit reversed. It stated that there was "no doubt that a judge may otherwise resolve factual disputes regarding exhaustion under the PLRA," but it held that "the Seventh Amendment requires a jury trial when the resolution of the exhaustion issue under the PLRA would also resolve a genuine dispute of material fact regarding the merits of the plaintiff's substantive case." 96 F. 4th 911, 917, 923. That decision conflicted with Seventh Circuit precedent.

*Held*: Parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that requires a jury trial under the Seventh Amendment.   Pp. 467–479.

(a) Before reaching Richards's arguments for why his Seventh Amendment right to a jury trial has been violated, the Court must first determine whether a construction of the PLRA is "fairly possible" by which the constitutional question may be avoided.   *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U. S. 687, 707.   Such a construction is possible here.   Because the Court construes the PLRA to require a jury trial in Richards's case, the Court need not address whether Congress could have required otherwise in the PLRA without violating the Seventh Amendment.

PLRA exhaustion is a standard affirmative defense subject to "the usual practice" under the Federal Rules of Civil Procedure.   *Jones* v. *Bock*, 549 U. S. 199, 212.   The usual practice is that factual disputes regarding legal claims go to the jury, even if that means a judge must let a jury decide questions he could ordinarily resolve on his own.   *Beacon Theatres, Inc.* v. *Westover*, 359 U. S. 500, 510–511.   That usual practice matters for interpreting the PLRA because "Congress is understood to legislate against a background of common-law adjudicatory principles . . . with an expectation that the principle[s] will apply except 'when a statutory purpose to the contrary is evident.'"   *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108 (quoting *Isbrandtsen Co.* v. *Johnson*, 343 U. S. 779, 783).   No such contrary purpose is evident in the PLRA.   The PLRA is "silent" on whether judges or juries should resolve exhaustion disputes, and that silence is "strong evidence that the usual practice should be followed."   *Jones*, 549 U. S., at 212.   Pp. 467–470.

(b) At the time the PLRA was enacted, it was well established that factual disputes intertwined with claims that fall under the Seventh Amendment should go to a jury.   The Court has held in various contexts that, in cases of intertwinement, district courts should structure their order of operations to preserve the jury trial right.   Pp. 470–474.

(1) One prominent line of cases involves suits that contain both legal and equitable claims.   Ordinarily, judges resolve equitable claims and juries resolve legal claims.   In *Beacon Theatres*, this Court held that judges may not resolve equitable claims first if doing so could prevent legal claims from getting to the jury.   In that case, both the legal and equitable claims hinged on the "common issue" whether there was an antitrust violation.   359 U. S. 500, 503.   The Court emphasized that in that situation, judicial "discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial."   *Id.*, at 510.   Because resolving the equitable claims could "prevent a full jury trial"

on the legal claims, the legal claims first needed to be resolved by a jury. *Id.*, at 505, 508. In this case, the parties agree that the exhaustion and First Amendment questions depend on common factual issues, and *Beacon Theatres* teaches that a trial court must preserve the jury trial in such a situation whenever possible. Nothing in the PLRA prevents holding a jury trial here. Pp. 471–472.

(2) Cases involving subject matter jurisdiction are also instructive. Ordinarily, judges may resolve factual disputes when determining subject matter jurisdiction. But courts may not do so when the factual disputes are intertwined with the merits. In *Smithers* v. *Smith*, 204 U. S. 632, the Court held that judicial authority to dismiss for lack of subject matter jurisdiction "obviously is not unlimited," for that would risk summarily determining the merits "without the ordinary incidents of a trial, including the right to a jury." *Id.*, at 645. In *Land* v. *Dollar*, 330 U. S. 731, the Court found that *Land* was "the type of case where the question of jurisdiction is dependent on decision of the merits" and thus held the District Court should have "proceed[ed] to a decision on the merits." *Id.*, at 735, 738–739.

In its decision below, the Sixth Circuit relied on its precedent applying *Land*, reasoning that if "certain cases [must] be heard and determined on the merits even when constitutionally implicated jurisdictional disputes" are at play, then "the result should be the same when the lesser concern of an affirmative defense, such as the PLRA's requirement to exhaust administrative remedies, implicates the merits of a claim." 96 F. 4th, at 923. The Court finds this reasoning persuasive. After all, when the PLRA was enacted, many lower court decisions and treatises had extended the intertwinement principle to other threshold questions, like personal jurisdiction and venue. The Court expresses no view today on whether lower courts have been correct to extend the intertwinement principle to these other issues, but simply notes that these cases—along with *Beacon Theatres* and *Smithers*—show that when the PLRA was enacted, the usual practice in the federal courts across a variety of contexts was to resolve factual disputes that are intertwined with the merits at the merits stage. Pp. 472–474.

(c) Perttu's counterarguments are unpersuasive. Perttu argues that *Beacon Theatres* is inapplicable, but his argument relies on the questionable assumption that judicial factual findings concerning exhaustion have no estoppel effect in later jury trials. Regardless, even if Perttu is correct about estoppel, *Beacon Theatres* still applies when judicial resolution might prevent a full jury trial for other reasons. Here, Richards's claim is being dismissed entirely rather than just estopped, and it is usually impossible for prisoners to go back and exhaust then file suit again, because grievance deadlines will have long since passed.

Perttu's argument that jury trials conflict with the PLRA's purpose of conserving judicial resources also fails, because the PLRA contemplates that merits claims will be resolved by a jury and is silent about exhaustion. The usual federal court practice in cases of intertwinement is to send common issues to the jury, and nothing in the PLRA suggests Congress intended to depart from that practice. Pp. 474–478.

96 F. 4th 911, affirmed.

ROBERTS, C. J., delivered the opinion of the Court, in which SOTOMAYOR, KAGAN, GORSUCH, and JACKSON, JJ., joined. BARRETT, J., filed a dissenting opinion, in which THOMAS, ALITO, and KAVANAUGH, JJ., joined, *post*, p. 479.

*Ann M. Sherman*, Solicitor General of Michigan, argued the cause for petitioner. With her on the briefs were *Kyla L. Barranco*, Assistant Solicitor General, and *Joshua S. Smith*, Assistant Attorney General.

*Lori Alvino McGill* argued the cause for respondent. With her on the brief was *J. Scott Ballenger*.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of Ohio et al. by *Dave Yost*, Attorney General of Ohio, *T. Elliot Gaiser*, Solicitor General, *Zachery P. Keller*, Deputy Solicitor General, and *Daniel McKitrick* and *Brandon Kennedy*, Assistant Attorneys General, and by the Attorneys General for their respective jurisdictions as follows: *Steve Marshall* of Alabama, *Tim Griffin* of Arkansas, *William Tong* of Connecticut, *Brian L. Schwalb* of the District of Columbia, *Ashley Moody* of Florida, *Christopher M. Carr* of Georgia, *Raúl R. Labrador* of Idaho, *Theodore E. Rokita* of Indiana, *Brenna Bird* of Iowa, *Kris Kobach* of Kansas, *Russell Coleman* of Kentucky, *Elizabeth B. Murrill* of Louisiana, *Anthony G. Brown* of Maryland, *Lynn Fitch* of Mississippi, *Austin Knudsen* of Montana, *Michael T. Hilgers* of Nebraska, *Gentner Drummond* of Oklahoma, *Ellen F. Rosenblum* of Oregon, *Peter F. Neronha* of Rhode Island, *Alan Wilson* of South Carolina, *Marty Jackley* of South Dakota, *Jonathan Skrmetti* of Tennessee, *Ken Paxton* of Texas, and *Sean D. Reyes* of Utah; for the International Municipal Lawyers Association et al. by *F. Andrew Hessick*, *Richard A. Simpson*, *Amanda Karras*, and *Erich Eiselt*; and for the National Sheriffs' Association et al. by *Gregory C. Champagne* and *Maurice E. Bostick*.

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *Jennifer A. Wedekind*, *Cecillia D. Wang*, and *Daniel S. Korobkin*; for the Cato Institute by *Clark M. Neily III* and *Matthew Cavedon*; and for Law Professors by *Kevin K. Russell*.

Page Proof Pending Publication

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners with complaints about prison conditions to exhaust available grievance procedures before bringing suit in federal court. 42 U. S. C. § 1997e(a). In some cases the question whether a prisoner has exhausted those procedures is intertwined with the merits of the prisoner's lawsuit. Respondent Kyle Richards is a prisoner in Michigan. He alleges that he was sexually abused by petitioner Thomas Perttu, a prison employee. He also alleges that when he tried to file grievance forms about the abuse, Perttu destroyed them and threatened to kill him if he filed more.

Richards sued Perttu for violating his constitutional rights, including his First Amendment right to file grievances. Perttu responded that Richards had failed to exhaust available grievance procedures as required by the PLRA. The parties agree that the exhaustion and First Amendment issues are intertwined, because both depend on whether Perttu did in fact destroy Richards's grievances and retaliate against him. The question presented is whether a party has a right to a jury trial on PLRA exhaustion when that dispute is intertwined with the merits of the underlying suit.

I

A

"Our legal system [is] committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law." *Jones* v. *Bock*, 549 U. S. 199, 203 (2007). "The challenge," however, "lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Ibid.* To address that challenge, Congress enacted the Prison Litigation Reform Act of 1995, 110 Stat. 1321–71, as amended, 42 U. S. C. § 1997e, which aims to "reduce the quantity and im-

prove the quality of prisoner suits." *Porter* v. *Nussle*, 534 U. S. 516, 524 (2002).

A "centerpiece" of the PLRA is its exhaustion provision. *Woodford* v. *Ngo*, 548 U. S. 81, 84 (2006). It provides:

> "No action shall be brought with respect to prison conditions under [42 U. S. C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a).

We have held that this provision "requires proper exhaustion" of available prison grievance procedures, meaning a prisoner "must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court." *Woodford*, 548 U. S., at 88, 93. But "exhaustion is not required" when a prison administrator "threaten[s] individual inmates so as to prevent their use of otherwise proper procedures." *Ross* v. *Blake*, 578 U. S. 632, 644 (2016). As we have explained, "such interference with an inmate's pursuit of relief renders the administrative process unavailable," so "§ 1997e(a) poses no bar" to suit. *Ibid.*

B

In 2020, Richards and two other prisoners filed this suit against Perttu under 42 U. S. C. § 1983. The complaint alleged that, over the prior year, Perttu had "engaged in a pattern of prolific and repetitive sexual abuse, against at least a dozen inmates," in violation of their constitutional rights. App. 2–3. The complaint also alleged that the plaintiffs had "attempted to exhaust remedies to the best of [their] ability" but had been "threatened and retaliated against" for doing so. *Id.*, at 2, 13. The complaint listed specific incidents in which Perttu allegedly ripped up the plaintiffs' grievance forms, threw them away, and threatened to kill the plaintiffs if they filed more. *Id.*, at 13–18. The plaintiffs also alleged they were being "wrongfully held in

administrative segregation in retaliation for filing grievances" and that Perttu was retaliating against them in other ways, all in violation of their First Amendment rights. *Id.*, at 18–27.

Perttu moved for summary judgment, arguing that the plaintiffs had failed to exhaust available grievance procedures as required by the PLRA. To support his motion, Perttu submitted an affidavit from a prison grievance coordinator attesting that there was no record evidence of the plaintiffs filing grievances about sexual abuse by Perttu in 2019 or 2020. The plaintiffs responded by reiterating that Perttu had intercepted and destroyed those grievances and had warned them not to file more. The Magistrate Judge concluded that there was "a genuine issue of fact as to whether Plaintiffs were excused from properly exhausting their claims due to interference by Perttu" and that the issue was "appropriate for resolution during an evidentiary hearing." App. to Pet. for Cert. 86a.

The Magistrate Judge held the evidentiary hearing by video conference in November 2021. App. 88. Richards, representing himself, conducted direct examinations of multiple witnesses who testified that they had seen Perttu destroy Richards's grievance forms and retaliate against him for filing them. See, *e.g.*, *id.*, at 210–214, 230, 234–238, 250–255. Perttu denied doing so. *Id.*, at 339–341. The Magistrate Judge concluded that Richards's witnesses "lacked credibility" because their testimony "was either substantially guided by Richards's manner of questioning or wholly conclusory." App. to Pet. for Cert. 69a. The Magistrate Judge therefore recommended the case be dismissed without prejudice for failure to exhaust. *Id.*, at 76a. The District Court adopted the recommendation. *Id.*, at 28a–29a.

C

Richards appealed to the Sixth Circuit. Still representing himself, he argued that resolving exhaustion through "a

bench trial"—one before a judge without a jury—is "not permissible where it would essentially be resolving a claim itself." Brief for Appellant in No. 22–1298, p. 1. After appointing counsel for Richards and requesting supplemental briefing, the Sixth Circuit reversed. It acknowledged that, under Circuit precedent, there was "no doubt that a judge may otherwise resolve factual disputes regarding exhaustion under the PLRA." 96 F. 4th 911, 917 (2024) (citing *Lee* v. *Willey*, 789 F. 3d 673, 677 (CA6 2015)). But the court held that "the Seventh Amendment requires a jury trial when the resolution of the exhaustion issue under the PLRA would also resolve a genuine dispute of material fact regarding the merits of the plaintiff's substantive case." 96 F. 4th, at 923. That decision conflicted with a contrary holding on the same question from the Seventh Circuit, see *Pavey* v. *Conley*, 544 F. 3d 739, 742 (2008), and we granted certiorari to resolve the split. 603 U. S. 949 (2024).

## II

"The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *SEC* v. *Jarkesy*, 603 U. S. 109, 121 (2024) (quoting *Dimick* v. *Schiedt*, 293 U. S. 474, 486 (1935)). Richards makes two arguments for why his Seventh Amendment right to a jury trial has been violated here. First, he argues that the dispute over exhaustion in this case is intertwined with a claim that falls squarely under the Seventh Amendment—his First Amendment retaliation claim for damages under § 1983—and that factual questions related to that claim must be resolved by a jury. See *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U. S. 687, 709, 720–721 (1999) (holding that "a § 1983 suit seeking legal relief is an action at law within the meaning of the Seventh Amendment" and that a "predominantly factual question" in such an action is "for the jury"). Sec-

ond, Richards makes a broader argument that, based on the historical test in *Markman* v. *Westview Instruments, Inc.*, 517 U. S. 370 (1996), the Seventh Amendment requires a jury trial for *all* factual disputes related to PLRA exhaustion, even those not intertwined with the merits.

Our precedents make clear that "[b]efore inquiring into the applicability of the Seventh Amendment, we must 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Del Monte Dunes*, 526 U. S., at 707 (quoting *Feltner* v. *Columbia Pictures Television, Inc.*, 523 U. S. 340, 345 (1998)). Such a construction is possible here. PLRA exhaustion is an affirmative defense subject to "the usual practice under the Federal Rules [of Civil Procedure]." *Jones*, 549 U. S., at 212. The usual practice is that factual disputes regarding the merits of a legal claim go to the jury, even if that means a judge must let a jury decide questions he could ordinarily decide on his own. See *Beacon Theatres, Inc.* v. *Westover*, 359 U. S. 500, 510–511 (1959). That usual practice matters for interpreting the statute because "Congress is understood to legislate against a background of common-law adjudicatory principles . . . with an expectation that the principle[s] will apply except 'when a statutory purpose to the contrary is evident.'" *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108 (1991) (quoting *Isbrandtsen Co.* v. *Johnson*, 343 U. S. 779, 783 (1952)). No such contrary purpose is evident in the PLRA.

For those reasons, we hold as a matter of statutory interpretation that parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment. In light of this holding, we express no view today on whether Congress could have required otherwise in the PLRA without violating a party's Seventh Amendment right to a jury trial. See *Byrd* v. *Blue Ridge Rural Elec. Cooperative, Inc.*, 356 U. S. 525, 537, and n. 10 (1958) (holding that affirmative de-

fense should go to jury due to "the manner in which [the federal system] distributes trial functions between judge and jury," making it "unnecessary" to consider "the constitutional question").[1]

## A

We begin with a settled premise: PLRA exhaustion is a standard affirmative defense. *Jones*, 549 U. S., at 216. As we said in *Woodford*, 548 U. S., at 101, PLRA exhaustion is "not jurisdictional," which is why "a district court [is allowed] to dismiss plainly meritless claims without first addressing" the often "more complex question" of exhaustion. And as we said in *Jones*, 549 U. S., at 216, PLRA exhaustion is not a "pleading requirement," which is why "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Rather, PLRA exhaustion is an "affirmative defense" subject to "the usual practice under the Federal Rules." *Id.*, at 212. And that usual practice applies, *Jones* explained, even though the PLRA is "silent on the issue," because that silence is itself "strong evidence that the usual practice should be followed." *Ibid.*

The PLRA is similarly "silent on the issue" whether judges or juries should resolve factual disputes related to exhaustion. The exhaustion provision states simply that "[n]o action shall be brought with respect to prison condi-

_____

[1] The dissent criticizes us for asking whether we can avoid the constitutional question by answering the statutory one. *Post*, at 484–486, and n. 3 (BARRETT, J., dissenting). But we have described doing exactly that as a "cardinal principle." *Tull* v. *United States*, 481 U. S. 412, 417, n. 3 (1987). The dissent suggests the principle does not apply here because the parties did not raise it and the courts below did not address it. But the same was true in *Tull*, yet we still began by asking whether it was possible to read the statute to avoid the constitutional question, and moved on only after concluding the answer was no. Surely we should not deviate from that principle simply because our answer this time is yes. And in this case, the statutory question has been fully briefed by *amici* and involves the same precedents relied on by the parties. See Brief for Law Professors as *Amici Curiae* 8–15.

tions . . . until such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a). Perttu does not argue that this provision *requires* that exhaustion disputes be resolved by judges. And rightly so. As we noted in *Jones*, the phrase "[n]o action shall be brought" is "boiler-plate language" often used for other affirmative defenses, like statutes of limitations, 549 U. S., at 220, that routinely go to the jury. And "failure to exhaust was notably not added" to the PLRA's screening provisions, which require judges to dismiss cases on specified grounds. *Id.*, at 214.

Just like in *Jones*, then, the statutory silence on the question before us "is strong evidence that the usual practice should be followed." *Id.*, at 212; see also *Dixon* v. *United States*, 548 U. S. 1, 17 (2006) ("In light of Congress' silence on the issue . . . it is up to the federal courts to effectuate the affirmative defense . . . as Congress may have contemplated it . . . given the long-established common-law rule." (internal quotation marks omitted)). We therefore look to the usual practice for resolving factual disputes intertwined with the merits.[2]

B

The PLRA was enacted in 1996. By that time, it was well established that when a factual dispute is intertwined with the merits of a claim that falls under the Seventh Amendment, that dispute should go to a jury, even if that requires judges to defer determinations they would ordinarily make on their own. We have accordingly held in various contexts

---

[2] The dissent thinks this should be an even "easier case" than *Tull* and others where we concluded that a statute did not confer a jury trial right. *Post*, at 488. But our analysis in this case is that "the usual practice should be followed," *Jones* v. *Bock*, 549 U. S. 199, 212 (2007), and that the usual practice in cases of intertwinement is to send the question to the jury, see *Beacon Theatres, Inc.* v. *Westover*, 359 U. S. 500, 510–511 (1959); see also *post*, at 490 (recognizing that *Beacon Theatres* establishes a "general prudential rule"). *Tull* and the other cases did not implicate a practice or rule like *Beacon Theatres* that itself calls for a jury trial.

that, in cases of intertwinement, district courts should structure their order of operations to preserve the jury trial right.

1

One prominent line of cases involves suits that contain both legal and equitable claims. Ordinarily, judges resolve equitable claims and juries resolve legal claims. But in *Beacon Theatres*, 359 U. S., at 510–511, we held that judges may not resolve equitable claims first if doing so could prevent legal claims from getting to the jury.

*Beacon Theatres* involved an antitrust dispute between two movie theater companies. One company brought an equitable claim for a declaratory judgment that it had not violated antitrust laws. The other company brought a legal claim for money damages alleging that the first company *had* violated antitrust laws. Both the equitable and legal claims therefore hinged on the "common issue" whether there was an antitrust violation. *Id.*, at 503. Faced with this dilemma, we emphasized that, while judges ordinarily have "discretion in deciding whether the legal or equitable cause should be tried first," "that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial." *Id.*, at 510; see also *id.*, at 510–511 ("[O]nly under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." (footnote omitted)). The consequence in that case was clear: Because resolving the equitable claims could "prevent a full jury trial" on the legal claims, the legal claims needed to be resolved by a jury first. *Id.*, at 505, 508. The district court's decision to instead resolve the equitable claims first was therefore "not permissible." *Id.*, at 508.

Later cases confirm that *Beacon Theatres* should be read "expansively," applying to any claim triable by a jury even "in a suit in which the basic relief sought is equitable." 9 C.

Wright & A. Miller, Federal Practice and Procedure § 2302.1, pp. 33–34 (4th ed. 2020).   For example, in *Dairy Queen, Inc.* v. *Wood,* 369 U. S. 469, 473, 475 (1962), the plaintiff alleged that the defendant had breached a contract for use of the trademark "Dairy Queen," and the plaintiff sought both legal and equitable relief.   We observed that the legal and equitable claims therefore depended on "common" "factual issues related to the question of whether there [had] been a breach of contract."   *Id.,* at 479.   For that reason, the consequence was again clear: "[T]he district judge erred in refusing to grant petitioner's demand for a trial by jury."   *Ibid.*

In this case, the parties agree that the exhaustion and First Amendment questions depend on common factual issues.   And *Beacon Theatres* teaches that a trial court's discretion in such a situation is "very narrowly limited and must, wherever possible, be exercised to preserve jury trial." 359 U. S., at 510.   Nothing in the PLRA prevents holding a jury trial here.

2

Our cases involving subject matter jurisdiction are also instructive.   Ordinarily, judges may resolve factual disputes in the course of determining whether subject matter jurisdiction is proper.   See *Wetmore* v. *Rymer,* 169 U. S. 115, 120–121 (1898).   But we have long held that a court may not do so when the factual disputes are intertwined with the merits.

For example, in *Smithers* v. *Smith,* 204 U. S. 632, 641–642 (1907), the district court concluded that it lacked subject matter jurisdiction because the case did not meet the $2,000 amount-in-controversy requirement.   The district court did so, however, by finding that even if the defendants had each taken a part of the plaintiff's land—as the plaintiff alleged— the defendants had not acted jointly, and so the aggregate amount in controversy did not exceed $2,000.   *Id.,* at 645– 646.   We reversed because we found that, in arriving at this conclusion, the district court had decided a factual question that was "an essential element of the merits of the dispute"—

whether the defendants had acted jointly—and so had "in effect, decided the controversy between the parties upon the merits." *Id.*, at 646. We acknowledged that judges ordinarily have "the authority to dismiss [an] action [for lack of subject matter jurisdiction] without trial by jury." *Id.*, at 644–645. But we held that this authority "obviously is not unlimited," "lest under the guise of determining jurisdiction the merits of the controversy between the parties be summarily decided without the ordinary incidents of a trial, including the right to a jury." *Id.*, at 645.

We applied similar analysis in *Land* v. *Dollar,* 330 U. S. 731 (1947). There the district court concluded that it lacked subject matter jurisdiction due to sovereign immunity, because the suit for unlawful possession of stock shares by federal officials was in fact a suit "against the United States." *Id.*, at 734. We recognized that "as a general rule the District Court would have authority to consider questions of jurisdiction." *Id.*, at 735. But we found that *Land* was "the type of case where the question of jurisdiction is dependent on decision of the merits," because both questions hinged on the plaintiffs' claims that "the shares of stock never were property of the United States." *Id.*, at 735, 738. We therefore held that the district court should have "proceed[ed] to a decision on the merits" rather than resolve the jurisdictional issue at a preliminary stage. *Id.*, at 739. See *Gulf Oil Corp.* v. *Copp Paving Co.*, 419 U. S. 186, 203, n. 19 (1974) (acknowledging practice of "reserving the jurisdictional issues" when there is "an identity between the 'jurisdictional' issues and certain issues on the merits"); see also 8 J. Moore, D. Coquillette, G. Joseph, G. Vairo, & C. Varner, Moore's Federal Practice § 38.34[1][c][i], p. 38–154 (3d ed. 2024) (Moore); 5B C. Wright, A. Miller, & A. Spencer, Federal Practice and Procedure § 1350, pp. 224–226 (4th ed. 2024).

In its decision below, the Sixth Circuit relied on its Circuit precedent applying *Land*, reasoning that if "certain cases [must] be heard and determined on the merits even when

constitutionally implicated jurisdictional disputes" are at play, then "the result should be the same when the lesser concern of an affirmative defense, such as the PLRA's requirement to exhaust administrative remedies, implicates the merits of a claim." 96 F. 4th, at 923 (citing *Fireman's Fund Ins. Co.* v. *Railway Express Agency, Inc.*, 253 F. 2d 780, 784 (CA6 1958)). We find that reasoning persuasive. After all, when the PLRA was enacted, many lower court decisions and treatises had extended the intertwinement principle to other threshold questions, including personal jurisdiction, venue, choice of law, and *forum non conveniens*. See, *e.g.*, 5 J. Moore et al., Moore's Federal Practice ¶38.36[3], p. 38–341 (2d ed. 1996) ("[T]o determine that the alleged acts did not take place . . . on motion to dismiss for want of proper venue would be to deny the plaintiff a jury trial on the merits."); see also 8 Moore §§38.34[1][e], [2], [3] (3d ed. 2024). We express no view today on whether lower courts have been correct to extend the intertwinement principle to these other issues. We simply note that these cases—along with *Beacon Theatres* and *Smithers*—show that when the PLRA was enacted, the usual practice in the federal courts across a variety of contexts was to resolve factual disputes that are intertwined with the merits at the merits stage. The PLRA's complete silence on that question is therefore "strong evidence" that this "usual practice should be followed." *Jones*, 549 U. S., at 212.

C

Perttu offers important counterarguments, but we are ultimately not persuaded. First, Perttu argues that *Beacon Theatres* is inapplicable here. According to Perttu, the concern in *Beacon Theatres* was that judicial resolution of the equitable claims would have had collateral estoppel effect on the legal claims. But here, Perttu says, the judge's factual findings related to exhaustion would have no such effect in a later jury trial.

Opinion of the Court

Two Circuits have suggested they agree with Perttu that factual findings related to exhaustion have no estoppel effect, but with little analysis and in cases that did not squarely present an estoppel issue. See *Pavey*, 544 F. 3d, at 742; *Albino* v. *Baca*, 747 F. 3d 1162, 1171 (CA9 2014). Legal treatises, on the other hand, provide support for the proposition that factual determinations in a first action can have direct estoppel effect in a second action on the same claim. See Restatement (Second) of Judgments §27, Comment *b*, Illustration 3, Comment *d*, pp. 251–255 (1980); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4418, pp. 505–506 (3d ed. 2016). The Restatement gives an example analogous to the situation before us: If a court dismisses a case for lack of personal jurisdiction based on a particular factual finding, that factual finding has preclusive effect in a subsequent action on issues beyond just personal jurisdiction. Restatement (Second) of Judgments §27, Illustration 3, p. 252.[3] Perttu also overlooks the fact that, if the judge below had ruled that Perttu *did* destroy Richards's grievances, then Perttu himself may have been precluded from relitigating that issue before the jury under law of the case. See 18B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4478.5, p. 773 (3d ed. 2019).

We therefore cannot reject the possibility that a judicial ruling on PLRA exhaustion might have estoppel effect in a later jury trial. And *Beacon Theatres* shows that the proper path in that situation is to hold the jury trial, not to change the estoppel rules. See *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322, 333 (1979) ("Recognition that an equitable determination could have collateral-estoppel effect in a

---

[3] See also, *e.g.*, *Carr* v. *Tillery*, 591 F. 3d 909, 917 (CA7 2010) ("[A] dismissal can be without prejudice yet have preclusive effect."); *Deutsch* v. *Flannery*, 823 F. 2d 1361, 1364 (CA9 1987) ("It matters not that the prior action resulted in a dismissal without prejudice, so long as the determination being accorded preclusive effect was essential to the dismissal.").

subsequent legal action was the major premise of this Court's decision in *Beacon Theatres*.").[4]

Regardless, even if Perttu is right that factual findings concerning exhaustion have no estoppel effect in a later jury trial, we decline to limit *Beacon Theatres* artificially to cases involving estoppel. The problem in *Beacon Theatres* was that judicial resolution of a "common issue" might have "prevent[ed] a full jury trial" on the legal claims. 359 U. S., at 503, 505, 508. Estoppel was simply the reason why a "full jury trial" might have been "prevent[ed]" in that case. *Id.*, at 505 ("[T]o try the equitable cause first . . . might, *through collateral estoppel*, prevent a full jury trial." (emphasis added)). The principle of *Beacon Theatres* still applies when judicial resolution of a common issue might "prevent a full jury trial" for some reason *other* than estoppel. And here, that other reason is clear. Instead of just being estopped, Richards's claim is being dismissed entirely. We therefore agree with the Sixth Circuit's reasoning: Even assuming Perttu is right that a jury may "reexamine the judge's factual findings," that "rationale" "rings hollow if the prisoner's case is dismissed for failure to exhaust," because "[i]n such an instance, a jury would never be assembled to resolve the factual disputes." 96 F. 4th, at 921.

It is no answer, in our view, to say that a prisoner might someday get a jury by starting over, exhausting the grievance procedures, then refiling his lawsuit. After all, that path is impossible in most cases. As Perttu acknowledged at oral argument, "the time frames for . . . grievances are very short"— on the order of days. Tr. of Oral Arg. 35; see,

_____

[4] The dissent reads this "major premise" language from *Parklane* as suggesting that *Beacon Theatres* is all about estoppel. *Post*, at 491. But the question in *Parklane* was whether a prior equitable ruling could have estoppel effect in a subsequent legal action, and *Parklane* simply pointed out that *Beacon Theatres* believed it could—*i.e.*, that *Beacon Theatres* took that fact as a "major premise" then reasoned from there. That logic does not imply that *Beacon Theatres* is limited to cases involving estoppel.

*e.g.*, *Jones*, 549 U. S., at 207 (grievance deadlines of 2 to 5 days); *Woodford*, 548 U. S., at 95–96 (grievance deadlines of 14 to 30 days). By the time a case is dismissed for failure to exhaust, grievance deadlines will have long since passed. But Perttu makes no argument that such deadlines are tolled in these situations. Instead, he points to the fact that prison administrators in some (but not all) jurisdictions have discretion to excuse missed grievance deadlines, with no evidence of how often administrators actually exercise that discretion, let alone in cases where—as here—doing so would foreseeably set up a second lawsuit. And though Perttu makes a different argument for why Richards could exhaust and refile in this case,[5] he does not argue that courts should treat individual cases of intertwinement differently based on whether a particular party in a given case might one day get to a jury. See *Beacon Theatres*, 359 U. S., at 504 (concern at

———————

[5] Perttu argues that Richards remains able to exhaust because his allegations fall under the Prison Rape Elimination Act of 2003 (PREA), 117 Stat. 972, 34 U. S. C. § 30301 *et seq.*, and federal regulations prevent prisons from imposing deadlines on PREA grievances regarding sexual abuse. Reply Brief 14 (citing 28 CFR § 115.52(b)(1) (2024)). Accordingly, Perttu says, the PREA policy applicable in the State of Michigan when Richards filed suit did not bar him from filing new grievances. See App. 75 ("A prisoner may file a PREA grievance at any time."). Richards, however, says "[t]his is the first time in this five years of litigation that [Perttu] has represented that . . . all of [Richards's] claims might be able to be exhausted." Tr. of Oral Arg. 51. Richards also says that his "First Amendment claim . . . is not protected by the PREA policy." *Id.*, at 51–52; see also App. 76 ("Any PREA grievance containing multiple issues, which include sexual abuse and non-sexual abuse issues, shall be processed . . . to address the allegations of sexual abuse only."). We take no position on this dispute.

Perttu also notes that the Michigan Department of Corrections has since amended its PREA policy to "eliminat[e] the administrative grievance procedure for addressing prisoner grievances regarding sexual abuse." Reply Brief 14, n. 3. We take no position on whether this new policy covers Richards's First Amendment claim or whether there are other administrative remedies that Richards would need to exhaust before filing a subsequent action.

issue arises when prior determination by judge "might" deprive party of jury trial); *id.*, at 505 (same).

Finally, Perttu argues that requiring a jury trial here would conflict with the purpose of PLRA exhaustion, which is to conserve judicial resources by preventing unexhausted claims from going to trial. For support, Perttu cites our decision in *Katchen* v. *Landy*, 382 U. S. 323 (1966). There we held that a bankruptcy court could proceed to decide an equitable claim—even if similar issues might one day arise before a jury on a legal claim—because to prevent the equitable claim from being "tried in the bankruptcy court in the normal manner" would be "to dismember a scheme which Congress has prescribed." *Id.*, at 339.

But *Katchen* is clearly far afield. That case involved a "specific statutory scheme"—bankruptcy—"contemplating the prompt trial of a disputed claim without the intervention of a jury" in a special set of courts created for that purpose. *Ibid.* The equivalent "statutory scheme" here—the PLRA—contemplates that Richards's First Amendment claim *will* be resolved by a jury and is silent about whether a jury should resolve exhaustion.

Perttu responds that holding a jury trial on exhaustion nonetheless conflicts with congressional intent because the point of PLRA exhaustion is to ensure that only exhausted claims go to trial. But that objection would apply with even greater force in *Smithers* and *Land*, because—by the same logic—holding a trial on subject matter jurisdiction would conflict with the purpose of ensuring that trials happen only where jurisdiction is proper. See *Ex parte McCardle*, 7 Wall. 506, 514 (1869) ("Without jurisdiction the court cannot proceed at all in any cause."). Yet *Smithers* and *Land* show that, in cases of intertwinement, the proper practice is indeed to go to trial. We therefore cannot agree with Perttu that the PLRA's general interest in conserving judicial resources shows that Congress clearly intended for judges to resolve exhaustion disputes in this unique circumstance.

BARRETT, J., dissenting

\*       \*       \*

If Congress had expressly provided in the PLRA that exhaustion disputes must be resolved by judges, then we would have been required to consider today whether such a provision violates the Seventh Amendment.   But it is a "cardinal principle" that we not address such a constitutional question unless necessary.   *Tull* v. *United States*, 481 U. S. 412, 417, n. 3 (1987).   Meanwhile, as we have shown, the usual practice of the federal courts in cases of intertwinement is to send common issues to the jury.   Because nothing in the PLRA suggests Congress intended to depart from that practice here, we hold that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment.

The judgment of the United States Court of Appeals for the Sixth Circuit is affirmed.

*It is so ordered.*

JUSTICE BARRETT, with whom JUSTICE THOMAS, JUSTICE ALITO, and JUSTICE KAVANAUGH join, dissenting.

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners suing under 42 U. S. C. §1983 to first exhaust the administrative remedies that are "available" to them.   §1997e(a).   In the decision below, the Sixth Circuit held that even if prisoners are not ordinarily entitled to a jury trial to resolve this threshold question, the Seventh Amendment requires a jury when exhaustion is intertwined with the merits.   I would reverse.   The jury right conferred by the Seventh Amendment does not depend on the degree of factual overlap between a threshold issue and the merits of the plaintiff's claim.

The Court takes a different path.   Instead of resolving the constitutional question that the parties brought to us, the Court holds that the PLRA *itself* requires a jury trial whenever an issue is common to exhaustion and the merits. No matter, the Court says, that the PLRA is silent on the

subject. No matter that this statutory argument was not briefed before us. And no matter that it was not passed on by the courts below.

Having taken this detour, the Court ends up in the wrong place. Reading the PLRA's silence to implicitly confer a right to a jury trial contravenes not only basic principles of statutory interpretation, but also several of this Court's precedents. I respectfully dissent.

I

Kyle Richards, a state prisoner, sued Thomas Perttu, a prison employee, for damages under § 1983. Richards alleged two bases for relief: First, he alleged that Perttu had sexually harassed several inmates, including Richards. And second, Richards alleged that when he had attempted to file grievances reporting the harassment, Perttu had retaliated in several ways, including by destroying Richards's grievance forms. See *ante*, at 465–466. Richards claimed that Perttu's initial harassment and subsequent retaliation violated the Eighth and First Amendments, respectively. See App. 18.

Because a damages suit under § 1983 is a "Sui[t] at common law," all agree that the Seventh Amendment entitles Richards to a jury trial on the merits of his claims. U. S. Const., Amdt. 7 ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved"); see *Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U. S. 687, 720–721 (1999). To litigate the merits, however, the PLRA requires Richards to establish that he exhausted "such administrative remedies as are available" to him. § 1997e(a). Whether Richards did so turns on a factual dispute about the availability of his administrative remedies. According to Richards, Perttu's destruction of Richards's grievances rendered the prison grievance system "unavailable" for purposes of the PLRA. *Ross* v. *Blake*, 578 U. S. 632, 644 (2016). Perttu, for his part, in-

sists that he did not destroy Richards's grievances; thus, he says, the system was available to Richards and Richards's failure to file grievances dooms his § 1983 claims.  See § 1997e(a).

This dispute about the facts engendered another about the law—and more specifically, about the role of the jury.   The PLRA itself says nothing about the right to a jury trial on the question of exhaustion.   And all the circuits to have considered the question hold that the Seventh Amendment does not require one.   So the consensus rule in the courts of appeals has been that PLRA exhaustion can be resolved through a bench trial.[1]

Although the Sixth Circuit has long embraced this rule, see *Lee* v. *Willey*, 789 F. 3d 673, 678 (2015), Richards argued that his case was special—and the Sixth Circuit agreed.   An exception applies, it held, "when the resolution of the exhaustion issue . . . would also resolve a genuine dispute of material fact regarding the merits of the plaintiff's substantive case."   96 F. 4th 911, 923 (2024).   In such cases, the Sixth Circuit held, the Seventh Amendment entitles the parties to a jury.   That holding broke with the decisions of the Seventh and Ninth Circuits, both of which have rejected a factual-overlap exception.   See *Pavey* v. *Conley*, 544 F. 3d 739, 742 (CA7 2008); *Albino* v. *Baca*, 747 F. 3d 1162, 1171 (CA9 2014) (en banc) (agreeing with *Pavey* in dicta).

II

Having granted certiorari to resolve this split, I would reverse.   The jury-trial right conferred by the Seventh Amendment does not turn on the degree of factual overlap

---

[1] See *Messa* v. *Goord*, 652 F. 3d 305, 308–310 (CA2 2011) (*per curiam*); *Small* v. *Camden Cty.*, 728 F. 3d 265, 269–271 (CA3 2013); *Dillon* v. *Rogers*, 596 F. 3d 260, 271 (CA5 2010); *Lee* v. *Willey*, 789 F. 3d 673, 677–678 (CA6 2015); *Pavey* v. *Conley*, 544 F. 3d 739, 741–742 (CA7 2008); *Albino* v. *Baca*, 747 F. 3d 1162, 1170–1171 (CA9 2014) (en banc); *Bryant* v. *Rich*, 530 F. 3d 1368, 1373–1377 (CA11 2008).

between a threshold question and the merits of the plaintiff's claim.

Because the Seventh Amendment provides that the " 'right of trial by jury shall be preserved,' " it protects " 'the right which existed under the English common law when the Amendment was adopted.' " *Markman* v. *Westview Instruments, Inc.*, 517 U. S. 370, 376 (1996). In actions that would have been tried at law at the founding, such as this one, the question is whether the "particular trial decision" at issue "must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." *Ibid.*

The parties devote much of their time to debating the best founding-era analogue to the exhaustion defense. According to Richards, exhaustion is analogous to common-law defenses that would have been raised through a plea in bar.[2] Under the common-law pleading system, Richards argues, the parties' dueling pleas would isolate disputed points of law and fact, with the former allocated to a judge and the latter allocated to a jury. See H. Stephen, Principles of Pleading in Civil Actions 59–61 (1882); B. Shipman, Handbook of Common-Law Pleading § 15, p. 32 (3d ed. 1923). Perttu, on the other hand, grounds exhaustion in traditional equitable practice. In his view, an exhaustion defense most closely resembles a defensive equitable action to enjoin a lawsuit—an action that would have been heard by the chancellor, not a jury. *Liberty Oil Co.* v. *Condon Nat. Bank*, 260 U. S. 235, 242–243 (1922).

The Court does not get into this back-and-forth—and here, I agree with the Court. We did not take this case to determine whether the Seventh Amendment requires jury trials for *all* disputes about exhaustion. There is no circuit split on that question, and the court below did not address it.

───────────

[2] Richards relies primarily on the plea in discharge, a type of plea in bar that applies when the plaintiff's cause of action has been "discharged by some matter subsequent, either of fact or of law." B. Shipman, Handbook of Common-Law Pleading § 198b, p. 348 (3d ed. 1923).

(Recall that under binding Sixth Circuit precedent, there is generally no Seventh Amendment right to a jury trial for exhaustion disputes. See *Lee*, 789 F. 3d, at 678.) The question, moreover, might be very difficult. Neither party identifies an obvious analogue to exhaustion, a defense that developed long after the founding. See R. Berger, Exhaustion of Administrative Remedies, 48 Yale L. J. 981, and n. 1 (1939). Resolving the dispute would therefore require us to confront challenging historical and methodological questions: Did the Seventh Amendment constitutionalize common-law pleading rules? Does Congress have the authority, after the merger of law and equity, to fashion novel defenses as "equitable"? What presumption applies when the historical evidence is ambiguous? It would be unwise to address these questions before the lower courts have seriously considered them.

Answering the question presented, however, would not have required us to resolve these knotty issues. We granted certiorari to decide the same limited issue that the Sixth Circuit decided: whether a special Seventh Amendment rule applies when a factual dispute about exhaustion is intertwined with the merits. And on this question, the historical record is much clearer. Richards has presented *no* evidence that intertwinement with the merits was relevant to the jury-trial right. Instead, he simply repeats his broader historical argument: that factual disputes raised through pleas were heard by juries. But this was true regardless of whether the dispute overlapped with the merits. See, *e.g.*, *Wetmore* v. *Rymer*, 169 U. S. 115, 120–123 (1898) (describing "trial[s] had with a jury" over subject-matter jurisdiction). Likewise, Perttu's account does not implicate intertwinement. *All* equitable defenses were heard by "the judge as a chancellor" because they were freestanding equitable actions. *Liberty Oil*, 260 U. S., at 242–243; see W. Cook, Equitable Defenses, 32 Yale L. J. 645, 650–652 (1922–1923).

The upshot is that there is no historical support for a special intertwinement rule. Mere factual overlap with the

merits does not transform a collateral issue ordinarily re-solved by a court into one necessarily resolved by a jury. We could have corrected that constitutional error and saved the broader, more complicated debate for another day.

### III

Remarkably, in this Seventh Amendment case, the Court has nothing to say about the Seventh Amendment. In fact, the Court sets the Constitution entirely aside, "express[ing] no view" on how or when it demands that a jury resolve intertwined factual disputes. *Ante*, at 468–469. Left with nothing else to interpret, the Court pivots to the PLRA. True, the Court acknowledges, the PLRA says nothing about the role of the jury—and certainly nothing about the role of the jury in resolving disputes about exhaustion. But as a matter of statutory interpretation and "'common-law adjudi-catory principles,'" the Court holds that the PLRA nonethe-less requires a jury trial when a dispute about exhaustion is "intertwined with the merits" of the plaintiff's claim. *Ante*, at 468.

This is wrong several times over. Richards did not pres-ent this statutory theory to us or any other court; the PLRA does not confer a jury right through its silence; and the Court plucks its purported "common-law adjudicatory princi-ple" out of thin air. I take each point in turn.

### A

To begin, the Court spins a statutory theory that Richards has never even mentioned, much less developed.[3] Before us,

---

[3] The avoidance canon permits a court to choose a less plausible interpre-tation of a statute when the most natural one would provoke a "'serious'" constitutional question. *Zadvydas* v. *Davis*, 533 U. S. 678, 689 (2001). Though the Court invokes the canon in this case, it is unwilling to say that interpreting the PLRA to permit a court to resolve Richards's exhaustion defense would pose a "serious" constitutional question. This reticence is presumably attributable to the scant historical support for Richards's proposed intertwinement rule. Even if the canon applied, moreover, the

BARRETT, J., dissenting

Richards argues only that he has a constitutional right to a jury trial. Both his Brief in Opposition and his merits brief focus exclusively on the Seventh Amendment. See Brief for Respondent 3 ("[T]he Seventh Amendment clearly protects Respondent's right to jury resolution of disputed historical facts central to the merits of his legal claim"); Brief in Opposition 1 ("The Sixth Circuit correctly held that [the District Court's] process violated the Seventh Amendment"). The same was true below. In the District Court, Richards's argument turned on the proper application of circuit precedent—precedent that has everything to do with the Seventh Amendment and nothing to do with the PLRA. See Objections and Request for Review in No. 2:20–cv–00076 (WD Mich., Aug. 6, 2021), ECF Doc. 102, p. 2; *Lee,* 789 F. 3d, at 678. Following Richards's lead, the District Court likewise focused on the Seventh Amendment. 2021 WL 3508384, *2 (WD Mich., Aug. 10, 2021) ("[T]he Seventh Amendment right to a jury trial [does] not extend to the exhaustion question"). On appeal in the Sixth Circuit, Richards continued to press the same Seventh Amendment argument. Brief for Appellant in No. 22–1298, p. 2; see generally Supplemental Brief for Appellant in No. 22–1289. So, no surprise, the Sixth Circuit addressed only the Seventh Amendment. See 96 F. 4th, at 923 ("[T]he Seventh Amendment requires a jury trial when the resolution of the exhaustion issue under the PLRA would also resolve a genuine dispute of material fact regarding the merits of the plaintiff's substantive case").

In light of this procedural history, the Court's path is perplexing. We typically refuse to consider arguments that the parties failed to make before us. See *Reno* v. *American Civil Liberties Union,* 521 U. S. 844, 863, n. 30 (1997). Likewise, "we normally decline to entertain . . . arguments" that a party "failed to raise . . . in the courts below." *Kingdomware Technologies, Inc.* v. *United States,* 579 U. S. 162, 173

---

chosen interpretation must be plausible—and, as I explain in the next Part, the Court's interpretation most certainly is not.

(2016). And we regularly emphasize that "we are a court of review, not of first view," so we generally do not address issues that the court of appeals did not analyze first. *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005). (Making matters worse, it is not clear that *any* court has considered the statutory question the Court resolves today.) Apparently, these party-presentation principles have no purchase here. Without any prompting from the parties, the Court devises and embraces a theory that Richards himself never raised— all, ironically enough, to save his case from dismissal for an alleged failure to exhaust.

B

Nor does the Court depart from party presentation in service of a sound result. Its analysis goes wrong at every turn, beginning with its choice to venture beyond statutory text into the realm of statutory silence.

As the Court recognizes, the PLRA is " 'silent on the issue' whether judges or juries should resolve factual disputes related to exhaustion." *Ante*, at 469. Indeed, a search of the exhaustion provision yields nothing remotely related to a jury trial:

> "No action shall be brought with respect to prison conditions under [42 U. S. C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a).

Notwithstanding this silence, the Court says that the PLRA guarantees the plaintiff "a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." *Ante*, at 468. According to the Court, this "intertwinement" rule is so well established that Congress expected courts to apply it even when the statute says nothing about it. *Ibid.* Supposedly, the rule is a " 'common-law adjudicatory principl[e]' " against which Congress legislates. *Ibid.*

BARRETT, J., dissenting

It is true that Congress sometimes legislates against the backdrop of a well-established principle.   For example, relying on the "strength of the traditional rule" that criminal offenses require *mens rea*, we interpret statutes to incorporate that requirement "'even where the statutory definition did not in terms include it.'"   *Staples* v. *United States*, 511 U. S. 600, 605–606 (1994) (quoting *United States* v. *Balint*, 258 U. S. 250, 251–252 (1922)).   Section 1997e(a), however, implicates no such "traditional rule."   (Note that while the Court treats the "intertwinement" rule as bedrock, it is apparently not confident enough in the rule's historical roots to call it constitutionally required.)   Even beyond that, however, the Court does not cite precedent applying this supposed rule—or anything like it—as a background principle of statutory interpretation.   And so far as I can tell, there is no such precedent.   On the contrary, when we have considered whether a statute confers the right to a jury trial, we have understood silence to mean what you would expect—that Congress did not affirmatively confer such a right.

Consider *Tull* v. *United States*, 481 U. S. 412 (1987).   There, we considered whether a civil action under the Clean Water Act required the jury's involvement.   We asked the same question that the Court asks today: Was a "'construction of the statute . . . fairly possible by which the [Seventh Amendment] question may be avoided'"?   *Id.*, at 417, n. 3.   No, we said: "Nothing in the language of the Clean Water Act or its legislative history implies any congressional intent to grant defendants the right to a jury trial."   *Ibid.*   *"Given this statutory silence,"* there was no statutory basis for a jury-trial right.   *Ibid.* (emphasis added).   That was so even though the traditional role of the jury in this context meant that the Seventh Amendment required one.   *Id.*, at 418–419.

Our decision in *Feltner* v. *Columbia Pictures Television, Inc.*, is similar.   523 U. S. 340 (1998).   Faced with the question whether a copyright owner was entitled to a jury trial

in a suit for damages, we observed that the statute was "silent on the point." *Id.*, at 342. The "entire statutory provision" made "no mention of a right to a jury trial or, for that matter, to juries at all." *Id.*, at 346. As in *Tull*, that silence was dispositive: We "discern[ed] no statutory right to a jury trial." 523 U. S., at 347. And again, that was so even though the Seventh Amendment demanded a jury. *Id.*, at 348–355.

Finally, in *Monterey*, we held that § 1983 "does not itself confer the jury right." 526 U. S., at 707. This was true, we explained, even though § 1983 authorizes a party to proceed through an "'action at law.'" *Ibid.* We declined to interpret the phrase as a "term of art implying a right to a jury trial," and, as a result, we declined "to find a statutory jury right under § 1983." *Id.*, at 707–708.

This should have been an easier case than *Tull*, *Feltner*, or *Monterey*. In each of those cases, the statute invoked terms traditionally associated with the jury-trial right. See *Monterey*, 526 U. S., at 707 ("'action[s] at law'"); *Feltner*, 523 U. S., at 352–353 ("statutory damages"); *Tull*, 481 U. S., at 422 ("civil penalty"). Indeed, in all three cases, we ultimately held that the Seventh Amendment required a jury trial. *Monterey*, 526 U. S., at 720–721; *Feltner*, 523 U. S., at 355; *Tull*, 481 U. S., at 427. It would have been easy to read into a phrase such as "action at law" an implicit instruction to require jury trials, but we did not do so; instead, we read the statute to mean what it actually said. *Monterey*, 526 U. S., at 708. Here, the statute contains no term traditionally associated with the jury-trial right, and the claim to a statutory backdrop is even weaker. That is perhaps why Richards never attempted to make the statutory argument that the Court advances now.

## C

The Court's approach to statutory interpretation is not only adventuresome—it also rests on an illusion. Neither history, nor logic, nor precedent supports its "intertwinement" rule.

I covered the lack of historical support for the rule in my discussion of the Seventh Amendment. On, then, to logic: The Court's proposed rule is both manifestly unfair and inherently arbitrary. Under the Court's approach, similarly situated plaintiffs are entitled to a jury (or not) based on immaterial distinctions in the claims they choose to bring. To see why, imagine that another inmate (say, Smith) sues Perttu based on the very same facts that Richards alleges here. Like Richards, Smith claims that Perttu sexually harassed him. And, like Richards, Smith contends that Perttu destroyed his grievances, thus excusing his failure to exhaust his available administrative remedies. But suppose that, unlike Richards, Smith brings only an Eighth Amendment claim. Because the destruction of grievance forms does not implicate the Eighth Amendment, Richards's proposed rule would not entitle Smith to a jury trial on exhaustion.

As this example illustrates, the Court's rule makes little sense. There is no question that both Richards and Smith would be entitled to a jury trial on the merits of their § 1983 claims. For both Richards and Smith, an adverse ruling on administrative exhaustion would require dismissal. For both Richards and Smith, the exhaustion question would depend on the same set of facts and credibility determinations. And for both Richards and Smith, an exhaustion-related dismissal would not preclude a subsequent suit once they have adequately exhausted their claims. So why should Richards get a jury trial, but not Smith? The Court does not say.

Instead, the Court relies on three cases holding (it says) that an issue triggers the jury-trial right if it is intertwined with the merits, even if it could ordinarily be resolved by the court. None of the cited cases stands for this proposition.

1

The Court leads with *Beacon Theatres, Inc.* v. *Westover*, 359 U. S. 500 (1959). See *ante*, at 471–472. In that case, the District Court had two actions before it: (1) an equitable action by the plaintiff (Fox Theatres); and (2) a countersuit by

the defendant (Beacon Theatres) for damages. See 359
U. S., at 502–503. Both actions involved a common issue re-
lated to the reasonableness of the plaintiff's underlying con-
tracts. But only the latter action—a suit at law—implicated
the right to a jury trial. That teed up the question: Which
should the trial court resolve first?

The answer, we held, is that courts ultimately have "dis-
cretion in deciding whether the legal or equitable cause
should be tried first." *Id.*, at 510. But this discretion
should, "wherever possible, be exercised" such that the legal
claims would be heard before the equitable ones. *Ibid.*
Resolving the equitable claim first, we explained, might inad-
vertently " 'operate either by way of res judicata or collateral
estoppel' " so as to limit the " 'opportunity fully to try to a
jury every issue which has a bearing upon' " the legal claim.
*Id.*, at 504 (quoting *Beacon Theatres, Inc.* v. *Westover*, 252
F. 2d 864, 874 (CA9 1958)).

*Beacon Theatres* does not hold, however, that the Seventh
Amendment compels legal-then-equitable sequencing. Nor
does it "construc[t]" statutory silence to require such a rule.
*Ante*, at 468. Instead, as our later cases confirm, *Beacon
Theatres* "enunciate[s] no more than a general prudential
rule" governing the trial court's "discretion in determining
the sequence of trial" when legal and equitable claims are
joined in the same action. *Parklane Hosiery Co.* v. *Shore*,
439 U. S. 322, 334 (1979). As a rule of discretion, it is not
hard and fast: We have observed that "there might be situa-
tions" in which a court may "resolve the equitable claim first
even though the results might be dispositive of the issues
involved in the legal claim." *Katchen* v. *Landy*, 382 U. S.
323, 339–340 (1966). Congress, too, has flexibility: It may
devise "a specific statutory scheme" that contemplates "the
prompt trial of a disputed claim without the intervention of
a jury." *Id.*, at 339.

With that understanding of *Beacon Theatres* in mind, the
differences with this case are hard to miss. *Beacon The-*

*atres* involved a court's discretion in judicial administration—discretion that Congress is always free to override. See *Katchen*, 382 U. S., at 339–340 (emphasizing that the *Beacon Theatres* rule can be displaced "[t]o implement congressional intent"). The Court's analysis here, by contrast, turns on whether Congress affirmatively conferred a jury-trial right on prisoners when it enacted the PLRA.

Besides, the problem that drove the Court's decision in *Beacon Theatres* is absent here. Recall the concern: that Fox's equitable claim would proceed to final judgment before Beacon Theatres's legal claim and thus preclusively resolve "the issues involved" in that claim. *Katchen*, 382 U. S., at 339–340. Indeed, as we later explained in *Parklane Hosiery*, "[r]ecognition that an equitable determination could have collateral-estoppel effect in a subsequent legal action *was the major premise*" of *Beacon Theatres*. 439 U. S., at 333 (emphasis added). The holding of *Beacon Theatres*, we underscored, was specifically intended to avoid foreclosing, "by res judicata or collateral estoppel," the "relitigation" of an "issue common to both legal and equitable claims." 439 U. S., at 334.

No such concern is present in this case. Both courts to have considered the issue have concluded, consistent with principles of collateral estoppel, that the resolution of facts relating to administrative exhaustion does not bind the jury in a subsequent trial. See *Pavey*, 544 F. 3d, at 742; *Albino*, 747 F. 3d, at 1171. This makes sense: Because collateral estoppel requires a "final judgment," it should have no force when the resolution of a threshold issue (like exhaustion) results in a without-prejudice dismissal. Restatement (Second) of Judgments § 27 (1980).[4]

———————
[4] While Richards does not dispute that collateral estoppel is inapplicable here, the Court suggests that it may apply. To support this contention, however, the Court simply relies on the hornbook principle that "factual determinations in a first action can have direct estoppel effect in a second

For reasons I do not understand, the Court recasts *Beacon Theatres* as having little to do with collateral estoppel. Without any hesitation, it turns *Beacon Theatres*'s "major premise" into a minor corollary, announcing that the case will not be "artificially" limited "to cases involving estoppel." *Ante*, at 476. But the reasoning of *Beacon Theatres* expressly turned on estoppel, and we have subsequently identified this principle as the animating force behind its holding. *Parklane Hosiery*, 439 U. S., at 333; *Katchen*, 382 U. S., at 339–340. And estoppel is the one circumstance where intertwinement with the merits has practical relevance to the jury-trial right. Without fanfare, citation, or explanation, the Court thus transforms our 40-year understanding of a seminal case on equity.

2

The Court's reliance on *Smithers* v. *Smith* and *Land* v. *Dollar* is even more of a stretch: Neither has anything to do with the question presented here.

_____

action on the same claim." *Ante*, at 475. To be sure, the resolution of a threshold issue precludes relitigation *of that same threshold issue* in a subsequent suit. See 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4436, p. 143 (3d ed. 2017). For that reason, if a court rules against a plaintiff on exhaustion and dismisses her case, she cannot relitigate whether she exhausted her administrative remedies. But if she prevails on exhaustion and proceeds to the merits, collateral estoppel should not preclude revisiting the facts that informed the court's ruling on exhaustion. Indeed, the cases cited by the majority, see *ante*, at 475, n. 3, are consistent with this principle. See *Carr* v. *Tillery*, 591 F. 3d 909, 916–917 (CA7 2010) (a determination that a federal court lacks subject-matter jurisdiction over a suit would bar a federal court from asserting jurisdiction in a subsequent suit); *Deutsch* v. *Flannery*, 823 F. 2d 1361, 1364 (CA9 1987) (a determination that a complaint fails to allege fraud with particularity could preclude the refiling of an identical complaint). The law-of-the-case doctrine would be similarly inapplicable. See 18B C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4478.5, p. 774 (3d ed. 2019) ("Reconsideration of a fact issue may be appropriate . . . if a change of procedural posture changes the nature of the issue").

Start with *Smithers*, in which the plaintiff asserted that the defendants had stolen his land.   204 U. S. 632, 640 (1907). The land, the plaintiff claimed, was worth more than $2,000, the amount-in-controversy requirement then in effect.   See *id.*, at 639–641.   After holding a bench trial, the District Court dismissed the case for lack of jurisdiction; according to the court, each defendant had taken a parcel worth less than $2,000, and the defendants had not acted jointly.   *Id.*, at 641–642.   In so holding, the court violated the black-letter rule that a plaintiff's declaration generally establishes the amount in controversy.   *Id.*, at 642.   Because it was "legally possible for the plaintiff to recover the full amount of all the land and the full amount of the damages claimed," we held that the District Court had erred in dismissing the case. *Id.*, at 644.

In other words, the District Court simply misapplied long-standing jurisdictional principles.   The plaintiff's pleadings were sufficient to establish jurisdiction, notwithstanding any factual disputes that might limit the plaintiff's potential recovery down the line.   But these disputes implicated the merits—damages, in particular—not jurisdiction.   *Smithers*'s rule is therefore unremarkable.   A trial court may not prematurely resolve a merits question by framing it as a jurisdictional question, thereby depriving the plaintiff of a jury.   *Smithers* says nothing about whether a threshold question requires a jury simply because of factual overlap with the merits.

*Land* v. *Dollar*, 330 U. S. 731 (1947), is even further afield. There, stockholders sued members of the U. S. Maritime Commission to recover stock previously delivered to the Commission.   *Id.*, at 733–734.   The District Court dismissed the case, reasoning that because the stock was federal property, sovereign immunity barred the plaintiff's suit. *Id.*, at 734–735.   That was an error, we held: Ownership of the stock implicated the merits of the stockholders' claim, so the court should not have decided that issue at the outset of the case.   *Id.*, at 739.

Nothing in *Land* turned on the Seventh Amendment; indeed, the word "jury" does not appear in our opinion or the opinion of the court below. See *Dollar* v. *Land*, 154 F. 2d 307 (CADC 1946). This may be because *Land* was a suit for injunctive relief and mandamus, not damages. See 330 U. S., at 740 (Reed, J., concurring); *Dollar*, 154 F. 2d, at 308 ("The complaint prayed for relief by way of injunction and mandamus against the defendant"). In fact, in the end "a lengthy trial was had before the court without a jury." *Dollar* v. *Land*, 184 F. 2d 245, 247 (CADC 1950). Sensibly, then, we have never understood *Land* to inform the scope of the right to a jury trial. It stands for the more limited proposition that when there is "an identity between the 'jurisdictional' issues and certain issues on the merits," there is "no objection to reserving the jurisdictional issues until a hearing on the merits." *Gulf Oil Corp.* v. *Copp Paving Co.*, 419 U. S. 186, 203, n. 19 (1974). This rule is just a principle of judicial administration—addressing circumstances in which it makes sense to defer ruling on a potentially jurisdictional issue until the merits—and not a holding on the jury-trial right.

\* \* \*

The Court reads the PLRA to say what it does not. It does so for reasons that the parties did not brief; that have no basis in our doctrine; and that are contrary to well-established principles of statutory interpretation. In so doing, the Court creates a regime under which an exhaustion requirement designed to "reduce the quantity and improve the quality of prisoner suits" just generates more litigation of its own. *Porter* v. *Nussle*, 534 U. S. 516, 524 (2002). Now, any prisoner can potentially obtain full jury review of the very threshold question that was designed to streamline prisoner litigation. All he has to do is find a way to transform his inability to use the prison system into a claim for relief. Congress did not devise such a rule, and we have never adopted one. I respectfully dissent.

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

p. 464, line 2 from bottom: "94 Stat. 352" is changed to "110 Stat. 1321–71, as amended,"